**No. 41775.**—Protest 922866–G of Northland Transportation Co. (Seattle).

KEEFE, Judge: The plaintiff in this action seeks to recover duty that was assessed and paid upon an anchor at 25 percent under paragraph 319 (a) and upon a chain at 1½ cents per pound under paragraph 329. The plaintiff claims that the merchandise is free of duty as American goods returned under paragraph 1615, but relies principally upon the claim that no duty is assessable for the reason that the anchor and chain do not constitute imported merchandise within the meaning of the tariff laws.

It is the plaintiff's contention that the American steamship *Denali* left Seattle, Wash., bound for Ketchikan, Alaska, but was wrecked off Zayas Island, near Prince Rupert, B. C., and that the *Denali* carried an anchor and chain; that various items were salvaged from the wreck and taken to Prince Rupert, B. C., and that the anchor and chain in question is the identical anchor and chain salvaged from said *Denali*.

It was fairly well established at the trial that a contract was entered into by the insuring underwriters of the *Denali* with the Armour Salvage and Towing Co. of Prince Rupert to undertake to salvage the wreck of the *Denali* on a contingent basis of 80 percent to that company and 20 percent to the owners and that the ownership of the salvaged material was in the said salvage company. It was definitely established that an anchor and chain was sold by the salvaging company to the plaintiff herein for the sum of $250 and that the sale took place in Prince Rupert and payment was made there to the salvage company by the captain of the *Northland*, a vessel owned by the plaintiff, and the vessel upon which the material in question was imported.

In an endeavor to trace an anchor and chain from the wrecked *Denali* as the imported anchor and chain now before us, the plaintiff offered the testimony of four witnesses. At the time of examination of these witnesses the Government made timely objections upon the proper grounds to their testimony and again before the final submission of the case, a motion was made that all testimony adduced by them be stricken from the record as wholly incompetent and hearsay. The judge hearing the case upon circuit from time to time ruled that the objections were good, but permitted the answers to be taken upon promise of plaintiff's counsel that such evidence was necessarily preliminary and would be later connected up. The judge hearing the case further stated that if it were not connected up it would be stricken, but at the end of the trial he deferred ruling thereon to be acted upon by this division of the court.

The first witness was the chief clerk of the owners of the *Denali*. He had knowledge that sailing orders for that vessel had been issued and that information had been received that the vessel had been wrecked. The second witness was a marine surveyor of the Board of Marine Underwriters of San Francisco who dealt with the owners relative to salvaging the vessel and contracted the Armour Salvage and Towing Co. of Prince Rupert to act in the matter of salvage. Although this witness had seen an anchor and chain at a previous time upon the *Denali*, he could not identify the articles as being the same in question here. The third witness was the principal surveyor of the American Bureau of Shipping a Seattle, whose duty it is to survey ships and make recommendations as to the equipment to be carried thereon. He saw the chain and anchor imported herein but was unable to identify it as being of American manufacture, or as an anchor and chain that was a part of the equipment of the wrecked vessel. A fact worth of note is that although the anchor before us was shown by this witness to hav

an identifying number, evidence was not produced to establish that any anchor upon the *Denali* bore the same number. The last witness was the manager of the Northland Transportation Co., the plaintiff herein. He testified that he arranged for the purchase of the anchor and chain involved herein through the marine surveyor and that he wired the captain of the *Northland* to take possession of the same and to make payment therefor to the Armour Salvage and Towing Co.

The evidence produced by these witnesses was based upon a mass of incompetent and hearsay documents, including letters, telegrams, and reports. Not one of the witnesses had first-hand knowledge that the anchor and chain imported herein had ever been a part of the equipment of the *Denali*. The plaintiff has totally failed to trace the same to the *Denali*. Much of the testimony of these witnesses is hearsay and wholly incompetent. However, we do not feel it necessary to rule upon the motion to strike in view of our decision on the merits.

It is clear in this case that irrespective of the intentions of the parties, had it been proven that the anchor and chain in question constituted a part of the equipment of a wrecked American vessel, that the anchor and chain was nevertheless the subject of sale in Canada and therefore entered the commerce of that country.

In the case of *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047, involving an engine taken from the wreck of the steamship *Delhi*, which was taken to Canada and there sold, and by said purchasers repaired and resold to the owners of the *Delhi*, the court held that the engine was exported from this country in the moment when, as an engine, it was taken out of the territorial jurisdiction of the United States with intent to introduce it into the commerce of a British possession.

The cases of *Van Camp Sea Food Co.* (*Inc.*) v. *United States*, T. D. 43661 and *Avalos* v. *United States*, T. D. 44277, are not in point in the situation now before us. In those cases the salvaged material was proven to be of American manufacture and the vessels were wrecked in Mexican waters and by the salvage operators brought directly into the United States.

In the case of *Wightman Bros.* v. *United States*, G. A. 757, T. D. 11582, salvaged material from the wreckage of warships of the United States was presented to the Government of Samoa and said Government had engaged a United States firm to sell the material in the United States. The court held that, inasmuch as there had been a change of ownership of the wreckage after the wreck to the Samoan Government, such wreckage had become the subject of purchase and sale and consequently was "merchandise" within the meaning of the law and as such liable to the imposition of duties.

The anchor and chain in question was not proven to be of American manufacture. Irrespective of the intentions of the parties it became the subject of sale in Canada. Under the *Coastwise Steamship* case, *supra*, the material took the classification of "merchandise" the moment that it was decided to sell it in Canada. Earlier intentions to treat it otherwise would not govern its status.

Therefore, as the articles in question were not shown to be of American manufacture and returned to the former United States owners, and further were the subject of sale in Canada, they entered the United States as imported merchandise and are consequently subject to duty at the appropriate rates.

Judgment will therefore be entered in favor of the defendant.