(C. D. 408)

CANADIAN NATIONAL STEAMSHIP CO., LTD. *v.* UNITED STATES

243

United States Customs Court, Second Division

(Decided December 11, 1940)

*Daniel P. McDonald* for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Charleston, S. C., brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of one propeller shaft and one propeller. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly entitled to free entry as part of a vessel and therefore not subject to the tariff law. It is alternatively claimed that if said articles are held to be dutiable, then the rate should be 27½ per centum ad valorem under paragraph 372 of said tariff act as parts of machines not specially provided for.

The latter claim, however, may be summarily overruled on authority of the decision in *Johnson Iron Works, Dry Dock & S. B. Co. v. United States*, T. D. 41132–G. A. 9040, 48 Treas. Dec. 237, in which

it was held that while a ship's propeller might be considered part of the *machinery* of a vessel, it was not a part of any particular *machine*.

In support of the claim for free entry the plaintiff offered in evidence the testimony of a single witness, Thomas William Waugh, general claims agent of the plaintiff-corporation. According to his testimony, which is uncontradicted, this extra propeller and shaft in question were made expressly for the British steamship *North Star* at the time the vessel was constructed, and the cost thereof was included in the original contract price of said steamship. They were intended to be carried on the deck of the vessel on her trip from England to Canada to be ready for use in case of an emergency.

However, when the *North Star* sailed from Canada, in order that she might be able to carry more passengers, fuel, and water, the spare propeller and shaft were removed from the vessel and stored at Halifax. Thereafter, when the vessel was in the Atlantic Ocean off the coast of South Carolina, its propeller and shaft were damaged and the vessel put into Charleston for repairs. The spare or extra propeller and shaft were then sent down from Halifax to be installed in the vessel, whereupon the collector at Charleston compelled the filing of a consumption entry and assessed duty on the propeller and shaft.

Upon these facts counsel for the plaintiff contend that the propeller and shaft are free of duty as parts of the vessel. In support of this contention counsel cites the case of *The Conqueror*, 166 U. S. 110, in which the Supreme Court of the United States held that vessels were subject to the navigation laws but not to the tariff laws, unless expressly made so by the Congress.

While the cited case has been followed in subsequent decisions of the courts and is undoubtedly the law, nevertheless, it does not apply to parts of a vessel separated from the vessel itself. In this connection counsel for the plaintiff cited the case of *United States* v. *Chain Cable*, 25 Fed. Cases 391, wherein the United States Circuit Court for the District of Massachusetts, speaking through Mr. Justice Story, held that a chain cable purchased in England to replace a damaged hempen cable and brought back to the United States as part of the equipment of the ship, and which was subsequently loaned to another vessel for temporary use, was not subject to duty by virtue of having been temporarily severed from the vessel.

Counsel also cites an opinion rendered to the Secretary of the Treasury by Attorney General John W. Griggs under date of February 24, 1899, 22 Op. Atty. Genl. 360, which in part reads as follows:

I understand it to be true that under the ruling of your department the racing rigging of a yacht, which can not be used in crossing the ocean, and is therefore brought back to this country on a steamer, is admitted free of duty, *because it is treated as part of the yacht itself.* [Italics ours.]

In the same opinion Attorney General Griggs advised the Secretary of the Treasury that a duplicate screw boss, specially made for the *Kaiser Wilhelm* but which was kept in Bremen for use in an emergency and brought to the United States on the *Friedrich der Grosse* for installation on the *Kaiser Wilhelm*, then disabled in an American port, might be regarded as a part of the *Kaiser Wilhelm* and as such admitted free of duty.

In the case of *Alex. Livingstone* v. *United States*, T. D. 13779, G. A. 1973, this court (then the Board of General Appraisers) held that an anchor lost by the British steamer *Mount Carmel* while lying at Vancouver, B. C., and which, after the departure of the *Mount Carmel* for American waters, was recovered and shipped to Port Townsend, Wash., where it was taken aboard the *Mount Carmel*, was not subject to duty. In this connection the Board of General Appraisers said:

We find that the said anchor was part of the equipment of the *Mount Carmel*, temporarily separated from that vessel by a casualty, and that its arrival in the United States for transfer to the said vessel was not in the nature of an import from a foreign country.

On the other hand, counsel for the Government cites the case of *Moral & Co.* v. *United States*, T. D. 29260, 16 Treas. Dec. 167. There, the merchandise consisted of certain parts of machinery used in repairing a steamship in the harbor of Mayaguez, P. R. The steamer was disabled at sea and was towed into the harbor for repairs. The parts necessary for the repairs were brought into the harbor by another steamship owned by the same company, and were not landed but merely transferred from one vessel to the other. The said parts were assessed with duty and were claimed to be free as parts of a vessel. This court (then the Board of General Appraisers) overruled the protest and held said parts to be dutiable.

In *United States* v. *Sickel*, 6 Ct. Cust. Appls. 146, T. D. 35394, the merchandise consisted of eight steam winches, brought into the port of New York on the steamship *Pretoria* and then transferred to the steamships *Carl Schurz* and *Emil Boas* of the same line which were undergoing alterations in contemplation of a change of service. The winches were assessed with duty and were claimed to be entitled to free entry as part of the equipment of the vessel. The Board of general Appraisers sustained the protest, but the United States Court of Customs Appeals reversed the decision of the lower court and held the parts to be properly dutiable.

In *Texas Transport & Terminal Co.* v. *United States*, T. D. 45897, 62 Treas. Dec. 223, the merchandise consisted of a cast iron propeller imported upon the steamship *Recca*, it being a spare part of said vessel which had been sent to the steamship *Aussa* which had lost her propeller off the coast of Cuba. The propeller was assessed with duty,

and the Third Division of this court held that it was not free of duty as a part of the vessel and accordingly overruled the protest.

While the decisions on the subject have been more or less conflicting, it is true that none of the cases cited involved the precise state of facts here presented. Of the cited cases the one which seems most in point is the comparatively recent case of *Page & Jones* v. *United States*, T. D. 49132, 72 Treas. Dec. 256, decided by this division on August 16, 1937. There the merchandise consisted of a steam turbine engine which had been removed from a British vessel in the port of Mobile, Ala., and sent abroad for repairs and returned to the United States to be installed again in the vessel. The collector at the port of Mobile classified the engine as dutiable under the *eo nomine* provision therefor in paragraph 372 of the Tariff Act of 1930, and assessed duty thereon accordingly. The importer claimed the engine to be part of the vessel's equipment, and as such entitled to free entry as a nonimportation. In overruling the protest we said:

We have carefully examined not only the cases but also statutes cited by counsel for the plaintiffs, but can find no authority for holding this steam turbine to be a nonimportation within the meaning of the Tariff Act of 1930. It was unquestionably a nonimportation and was so treated by the collector upon its original arrival in the United States, as an integral part of the *San Fernando*. But when it was removed from that vessel it became an engine and nothing more, and, as such, an article which may be exported and reimported, which was done. Upon its return it was a separate dutiable entity and was correctly so classified by the collector.

Our decision was affirmed in *Page & Jones* v. *United States*, 26 C. C. P. A. 124, C. A. D. 5, wherein the appellate court said:

It will be noticed from the opinion of the trial court that its action in overruling the protest was with reluctance. It appreciated, as we do, the seeming hardship that has been inflicted upon the importers and that it is unfortunate that they were required to pay customs duty amounting to $3,827.20 for goods which never went into the commerce of this country and which, as far as this record shows, were never intended to enter such commerce. It is regrettable that, as far as appears from the instant record, there was no remedy found in the Tariff Act of 1930 for the hardship complained of. Providing such a remedy is the province of the legislature and not of the courts.

\*       \*       \*       \*       \*       \*       \*

If such was the law with regard to the engine in the *San Fernando*, which was an integral part of the vessel without which the latter would be incomplete, then *a fortiori* that decision must control the classification of the present propeller and shaft which were only spare parts and when imported had never been installed in any vessel.

We therefore overrule all claims in the protest and affirm the decision of the collector. Judgment will be rendered accordingly.