(C. D. 1034)

A. JOHNSON & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 13, 1946)

Barnes, Richardson & Colburn (Eugene F. Blauvelt of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Arthur M. Martoccia and Herbert M. Rosenberg, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The Johnson Line of Stockholm, Sweden, is the owner of two motorships, the *Axel Johnson* and the *Annie Johnson*, both identically designed and constructed, and at the time of this proceeding in commission under Swedish registry. There were delivered to and installed in the former vessel, while in the port of New York, certain urgently needed engine repair parts which had been carried as spare parts by the latter vessel. These parts were treated as imported merchandise by the collector of customs at New York, who levied duty thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of machines, not specially provided for. Plaintiff contends that the articles are integral parts of a vessel and therefore are not subject to the payment of duty under said tariff act upon the theory that if the *Axel Johnson* itself is not imported merchandise under the doctrine of the case of *The Conqueror*, discussed *infra*, then parts thereof, such as those at bar, must be similarly regarded.

No material fact is disputed. Two witnesses appeared for plaintiff; none for defendant.

The testimony of C. Arne Hultberg discloses that in November and December 1941, in his capacity as purchasing agent for A. Johnson &

Co., Inc., an American corporation and United States agent for said Johnson Line, he endeavored, but without success, to purchase in this country certain necessary repair parts for the main and auxiliary Diesel engines of the *Axel Johnson* at that time en route to New York; that he then ordered such repair parts taken from the spare parts carried on board the *Annie Johnson,* which was then in the port of San Francisco, and had them shipped in bond to New York for delivery to and installation in the *Axel Johnson.*

Ernest Holmquist, chief engineer of the *Axel Johnson,* testified in detail concerning the nature and character of each of the articles and its function as a necessary and integral part of the vessel. He stated that the "2 Brass cylinders for starting-valve" and "4 Exhaust-valve house," mentioned in the invoice accompanying entry 729777, were integral parts of the main Diesel engine which turns the propeller of the ship; and that the remaining articles described on the invoice functioned as indispensable parts of three identically designed and constructed auxiliary engines which furnished power to the electric generators or dynamos "for driving the water-cooling pumps, lubricating oil pumps, for the light and everything like that," in the vessel. He testified that it was the practice on the *Annie Johnson* to carry spare parts identical with those here in controversy; that the vessel was not permitted by the insurance companies to go to sea without them "in case of a breakdown"; that "you must have replacements for the cylinders, pistons, and everything," adding, as to the probability of a breakdown, that "It has happened many times."

Plaintiff relies upon the doctrine promulgated by the Supreme Court of the United States in the case of *The Conqueror,* 166 U. S. 110, which was followed, upon a different state of facts, by our appellate court in *Canadian National Steamship Co., Ltd.* v. *United States,* 29 C. C. P. A. (Customs) 123, C. A. D. 180. In holding vessels not to be merchandise and therefore not subject to duties under customs laws, the Supreme Court in *The Conqueror* case, *supra,* said:

Vessels certainly have not been treated as dutiable articles, but rather as the vehicles of such articles, and though foreign built and foreign owned, are never charged with duties when entering our ports, though every article upon them, that is not a part of the vessel or of its equipment or provisions, is subject to duty, unless expressly exempted by law.

*       *       *       *       *       *       *

But the decisive objection to the taxability of vessels as imports is found in the fact that, from the foundation of the Government, vessels have been treated as *sui generis,* and subject to an entirely different set of laws and regulations from those applied to imported articles. By the very first act passed by Congress in 1789, subsequent to an act for administering oaths to its own members, a duty was laid upon "goods, wares and merchandise," imported into the United States, in which no mention whatever is made of ships or vessels; but by the next act, entitled "An Act Imposing Duties on Tonnage," a duty was imposed "on all ships or vessels entered in the United States" at the rate of 6 cents per ton upon

all such as were built within the United States, and belonged to American citizens; of 30 cents per ton upon all such as should thereafter be built within the United States, belonging to subjects of foreign powers, and of 50 cents per ton upon all other ships or vessels, with a proviso that no American ship or vessel employed in the coasting trade or fisheries should pay tonnage more than once in any year. This distinction between "goods, wares and merchandise," and "ships or vessels," has been maintained ever since, although the amount of such duties has been repeatedly and sometimes radically changed.

\* \* \* \* \* \* \*

In view of the elaborate opinion of the District Judge upon this branch of the case it is unnecessary to extend this discussion farther. We think that the liability of ships and vessels to tonnage dues and to light money, except where a certain class of vessels is specially exempted, shows that it was not the intention of Congress to treat them as dutiable articles. \* \* \*

In the course of its opinion in *Canadian National Steamship Co., Ltd.* v. *United States, supra,* the United States Court of Customs and Patent Appeals said:

There is no dispute about the facts. Thomas William Waugh, general claims agent for the appellant, testified that the propeller and shaft in question were made especially for the Canadian steamship T. S. S. *North Star* at the time said vessel was constructed in Birkenhead, England, and that the cost thereof was included in the original price of said vessel. The articles were carried on board the vessel from England to Canada and were intended to be carried and used on that vessel alone. The witness stated that owing to the fact that the deadweight of the vessel fell considerably under the estimated deadweight, and in order to carry more passengers, fuel, water, etc., it was decided to take off the spare propeller shaft and propeller and leave the same in the yard at Halifax until needed. Mr. Waugh further testified that the propeller and shaft, by reason of their special construction, could be used on no other vessel than the T. S. S. *North Star.* During February of 1938 the *North Star* was disabled off the southeastern coast of the United States and put into the Charleston navy yard for repairs. Said spare parts were sent from Halifax to Charleston for installation in the *North Star.*

Upon the above recital of facts the court expressed its conclusion as to the law in the premises as follows:

It is our view that the propeller and shaft in controversy, which could only be used upon this particular vessel, which were made especially for the vessel when it was constructed, and which were carried thereupon until necessity required their removal, are parts of the vessel. Indubitably, no one would have questioned the status of the merchandise if it had accompanied the vessel into the port of Charleston, S. C., and we think the circumstances under which it was removed from the vessel and subsequently placed thereon is not sufficient reason for holding it to be merchandise such as was held to be dutiable in the cases relied upon by the government, to wit: *Moral & Co.* v. *United States,* T. D. 29260, 16 Treas. Dec. 167; *United States* v. *Sickel,* 6 Ct. Cust. Appls. 146, T. D. 35394; *Texas Transport & Terminal Co.* v. *United States,* T. D. 45897, 62 Treas. Dec. 223; and *Page & Jones* v. *United States, supra.*

Where the above cases, relied upon by the Government, seem to be chiefly distinguishable is the fact that a line has been drawn between merchandise for the repair of a ship, *which merchandise was not made for the ship or as a part of the same,* and articles which are parts of the vessel. Unquestionably, repair merchandise that would be as suitable for one ship as for another could in no sense be regarded

as a part of a particular vessel, and especially does this seem true under certain decisions, if it did not accompany the vessel. [Italics supplied.]

The above views of our appellate court are in harmony with those enunciated in *United States* v. *Chain Cable*, 25 Fed. Cases 391, Case No. 14776. It appears therein that a chain cable was purchased in Liverpool by the master of the ship *Marathon* to supply the place of a steam hempen cable, which had become unseaworthy before the arrival of the ship at Liverpool; that the purchase was made *bona fide*, with the intention of using said cable for that ship and not to sell as merchandise; that the cable was stowed in the usual place, without any concealment, and on the arrival in Boston, the ship was secured by the said cable to the wharf. A few days after said arrival in Boston, the master of the *Marathon* agreed to loan the chain cable for use in launching another ship at Medford, the same to be returned when the launching was over. It was while landing the cable at Medford that it was seized by the customs officers. Soon thereafter, however, the cable was bonded and put on board the *Marathon*. Upon an information of forfeiture and seizure, the jury rendered a verdict for the defendant in the district court for the district of Massachusetts. The case was brought to the Circuit Court, District of Massachusetts, on a writ of error. In reviewing the case, Circuit Justice Story stated the issues as follows:

> In my judgment the whole point in this cause resolves itself into this; whether the chain cable in controversy was, at the time of its arrival and importation into the United States, bona fide, a part of the equipments and appurtenances of the ship Marathon. If it was, then it is clear to me, that no forfeiture is incurred. If it was not, then the case must be treated as an attempted evasion of the revenue collection act of 1799, c. 128, and the forfeiture consequently attaches.

> \* \* \* \* \* \* \*

> \* \* \* The "goods, wares, and merchandise," within the provision of the 50th section of the revenue collection act of 1799, c. 128, are such only as are designed for sale or to be applied to some use or object, distinct from their bona fide appropriation to the use of the ship; in which they are imported.

It will be observed that Justice Story was careful to point out that if the chain cable were to be considered a part of the *Marathon*, and hence distinguishable from "merchandise," it must be established that it was "at the time of its arrival and importation into the United States, bona fide, a part of the equipments and appurtenances of the ship Marathon." The court held that it was. The same reasoning was applied to the facts in the *Canadian National Steamship Co., Ltd.*, case, *supra*, as above indicated.

The factual situation in the present case does not appear to meet the test judicially enunciated in the cases discussed above. It is difficult to conceive how the merchandise here in controversy may be said to be "at the time of its arrival and importation into the United States, bona fide, a part of the equipments and appurtenances" of

the ship *Axel Johnson,* when upon its arrival it was, as matter of fact, a part of the vessel *Annie Johnson.* We are not prepared to hold that such a legal requirement may be satisfied for tariff purposes, by merely diverting parts of one vessel to supply the needs of another, as occurred in the instant case.

It may facilitate a clearer understanding of the conclusion we have reached herein if we briefly discuss the cases mentioned by our appellate court in the *Canadian National Steamship Co., Ltd.,* case, *supra,* and there relied upon by the Government.

In *Moral & Co. S. en C.* v. *United States,* 16 Treas. Dec. 167, T. D. 29260, it appears, as indicated in the syllabus that—

Machinery transferred without the supervision of customs officers from a foreign vessel of one line to a vessel of a different line is not entitled to exemption from duty under section 17, act of March 3, 1897. United States *v.* Boyd (24 Fed. Rep., 692); James' case, G. A. 4869 (T. D. 22828); Swift Beef Company's case, G. A. 4754 (T. D. 22450); 20 Opinions of Attorney-General, 194.

Section 17 there referred to provided that—

Sea stores and the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States delayed in port for any cause may be transferred in such port of the United States under the supervision of the customs officers from one vessel to another vessel of the same owner without payment of duties, but duties must be paid on such stores or equipment landed for consumption, except American products.

We quote from the opinion in that case as follows:

The facts as presented to us do not bring the case at bar within the purview of this statute. While the machinery in question was transferred from one vessel to another, it was not done, so far as the facts of this case show, under the supervision of a customs officer nor did the vessel from which it was transferred belong to the same owner as the vessel of the protestants. So, even if the machinery in question should be considered to be the legitimate equipment of a vessel, the case is not brought within the exemption provided for in this statute.

And a similar issue arose in *United States* v. *Sickel,* 6 Ct. Cust. Appls. 146, T. D. 35394, wherein a claim for free entry was denied under the navigation laws (R. S. 2797) as amended by section 17 of an act approved March 3, 1897 (29 Stat. at L., 691), for certain steam winches brought into this country on one steamship of the Hamburg-American Line and transferred at the port of New York to other steamships of the same line then undergoing extensive alterations. In sustaining the collector's classification of the articles under the provision for "steam engines" in paragraph 197 of the Tariff Act of 1909, the court pointed out:

To entitle such goods to free entry under section 17 they must meet the following prescribed requirements: First, they must be equipment of a vessel *delayed in port* and belonging to a regular line plying between foreign ports and the United States; second, they must be the *legitimate* equipment of such vessel—that is to say, equipment prudent to provide and reasonably necessary for the proper, efficient, and safe performance of the service in which the vessel is engaged or is

about to engage; third, they must be transferred in the port in which the vessel is delayed, from one vessel to another of the same owner, under customs supervision. [Italics quoted.]

In the course of its opinion the court further observed that—

For a long time prior to section 17 it was well settled that the bona fide equipment of a particular vessel, like the vessel itself, was duty free. *The Conqueror* (166 U. S. 110, 113). Equally well settled was the principle that equipment imported into the United States for a vessel or put on board of a vessel for the first time by transfer in an American port from some other vessel, even of the same owner, was subject to duty. T. D. 657, T. D. 1407, T. D. 9962, T. D. 11220, T. D. 11629, Opinions of Attorney General (vol. XX, p. 194).

It may be noted that the court apparently entertained some doubt as to the wisdom of the policy of exacting duties in such cases, which is indicated in the following language:

The policy of imposing duty on necessary equipment imported for some particular vessel or transferred to it from some other vessel of the same line for any cause may well be doubted when it is considered that the very same equipment, if installed abroad, may be brought into the country free of duty. Nevertheless, when it came to the passage of section 17 Congress does not seem to have concerned itself with the equipment imported for the use of a particular vessel or the unlimited transfer of equipment from one vessel to another even of the same owner, but with the transfer of equipment belonging to *vessels delayed in port*, and to that equipment and that transfer the operation of the section was expressly limited. [Italics quoted.]

In the case of *The Texas Transport & Terminal Co. (Inc.)* v. *United States*, 62 Treas. Dec. 223, T. D. 45897, a spare propeller, which the court described as part of the ship's stores of a steamship of one line and delivered to another vessel of a *different* line and ownership at the port of New Orleans, for the purpose of transshipment to a disabled sister ship at the port of Havana, Cuba, was held not to be exempt from duty under the special grant in section 446 of the Tariff Act of 1922, which provided for the transfer of such articles from one ship to another ship of the *same* line and *ownership* in a port of the United States.

Finally, in *Page & Jones* v. *United States*, 26 C. C. P. A. (Customs) 124, C. A. D. 5, it appears that a steamship of British registry was bound for Mexico when she became disabled on the high seas and was towed into the port of Mobile. Her turbine engine and parts were shipped to England for repairs. Upon their return from England, about 5 months later after being repaired, duty was imposed not only on the value of the repairs but on the value of the repaired machinery. The court, following its earlier decisions in *Agency Canadian Car & Foundry Co.* v. *United States*, 10 Ct. Cust. Appls. 172, T. D. 38547, and *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047, held that the repaired engine when returned to this country was an importation; that, as found by the trial court, although the engine was a nonimportation upon its original arrival

in the United States as an integral part of the disabled vessel, it became, upon its removal from that vessel, an article which could be exported and reimported, and was upon its return a separate dutiable entity.

While all of the cases to which reference has been made differ factually from the case now before us, nevertheless, the underlying principles which guided the courts in arriving at the conclusions in those proceedings would seem to govern the facts herein. Consequently, we are of the opinion that to sustain the claim of the plaintiff would require not only that we extend unduly the doctrine of *The Conqueror* and other cases, *supra*, but at the same time in effect ignore the settled principle which must apply to this case, namely, that for an article to be entitled to free entry as a part of a vessel it must be shown that it was at the time of its arrival and importation into the United States, *bona fide*, a part of a particular vessel, in this case the *Axel Johnson*.

For the reasons stated herein, the protest of the plaintiff is overruled and the decision of the collector is affirmed.

Judgment will be entered accordingly.