**No. 51622.**—Protest 113513-K/35 of W. C. Sullivan & Co. (Chicago).

LAWRENCE, Judge: The S. S. *Algonquins*, documented under Canadian registry, was temporarily disabled by reason of irreparable damage to its rudder while the ship was backing out of a slip after having discharged its cargo at the port òf Chicago, Ill. Rather than wait several months for a new rudder to be fabricated in the United States, the owners of the vessel obtained an old rudder from a sister ship in Canada and had it forwarded to Chicago for installation on the *Algonquins* to replace the damaged one.

Upon its importation, the rudder was classified by the collector of custòms as an article, not specially provided for, composed in chief value of metal, and duty was levied thereon accordingly at the rate of 45 percent ad valorem under paragraph 397, Tariff Act of 1930. An additional duty was imposed thereon at the rate of three-quarters of 1 cent per pound under section 3425, Internal Revenue Code (sec. 601 (c) (7), Revenue Act of 1932, 61 Treas. Dec. 1264, T. D. 45751) wherein—

* * * All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, containing 4 per centum or more of copper by weight * * *

are made dutiable at the rate of 3 percent ad valorem or three-fourths of 1 cent per pound, whichever is the lower.

In the protest and the amendment thereto various claims are alleged by the plaintiff but the one relied upon, as stated in its brief, is—

* * * that the rudder should be free of duty under the old and well established rule, which might be termed a "common law" principle of customs jurisprudence, that vessels, as well as parts of vessels are not subject to duty.

There is no disputed question of fact in the case. It was admitted that the imported rudder was not interchangeable with the one it replaced and required considerable alterations before it could be installed in the *Algonquins*.

Plaintiff contends that this case is governed by the decision in *Canadian National Steamship Co., Ltd.* v. *United States*, 29 C. C. P. A. (Customs) 123, C. A. D. 180. But we believe that the facts here established are easily distinguishable from those there passed upon by our appellate court. The merchandise in that case consisted of a propeller and propeller shaft which were made especially for the Canadian steamship T. S. S. *North Star* at the time the vessel was constructed in England, and the cost of which was included in the original price of the vessel. As pointed out by the court, said articles were carried on board the vessel from England to Canada and were intended to remain on that vessel *alone* for use when necessity required. Explaining the reason for their removal from the vessel, the court said:

* * * The witness stated that owing to the fact that the deadweight of the vessel fell considerably under the estimated deadweight, and in order to carry more passengers, fuel, water, etc., it was decided to take off the spare propeller shaft and propeller and leave the same in the yard at Halifax until needed.•

It appears, however, according to said opinion that—

· * * * During February of 1938 the *North Star* was disabled off the southeastern coast of the United States and put into the Charleston navy yard for repairs. Said spare parts were sent from Halifax to Charleston for installation in the *North Star*.

After reviewing various cases cited by the Government in support of its contention that the propeller and propeller shaft constituted merchandise in the

tariff sense, the court, expressing its view as to the applicable law in the premises, stated:

It is our view that the propeller and shaft in controversy, which could only be used upon this particular vessel, which were made especially for the vessel when it was constructed, and.,which were carried thereupon until necessity required their removal, are parts of the vessel. Indubitably, no one would have questioned the status of the merchandise if it had accompanied the vessel into the port of Charleston, S. C., and we think the circumstances under which it was removed from the vessel and subsequently placed thereon is not sufficient reason for holding it to be merchandise such as was held to be dutiable in the cases relied upon by the Government, to wit: *Moral & Co.* v. *United States*, T. D. 29260, 16 Treas. Dec. 167; *United States* v. *Sickel*, 6 Ct. Cust. Appls. 146, T. D. 35394; *Texas Transport & Terminal Co.* v. *United States*, T. D. 45897, 62 Treas. Dec. 223; and *Page & Jones* v. *United States, supra.*

adding this further significant observation:

Where the above cases, relied upon by the Government, seem to be chiefly distinguishable is the fact that a line has been drawn between merchandise for the repair of a ship, which merchandise was not made for the ship or as part of the same, and articles which are parts of the vessel. Unquestionably, repair merchandise that would be as suitable for one ship as for another could in no sense be regarded as a part of a particular vessel, and especially does this seem true under certain decisions, if it did not accompany the vessel.

It is at once obvious that the facts in the *Canadian Steamship Co.* case, *supra*, are wholly different from those here presented, but we regard the reasoning of the court in that case as controlling in the present situation, and we believe it fully supports the collector in treating the involved rudder as imported merchandise and not as a part of a vessel for tariff purposes.

Plaintiff also relies upon the decision of this court (then the Board of General Appraisers) in *Alex. Livingstone* v. *United States*, Synopsis of Decisions (1893) 183, T. D. 13779, wherein it was held that an anchor temporarily separated, as the result of a casualty, from a British vessel lying in Vancouver, B. C., but which was subsequently recovered, brought to the United States, and there restored to the vessel to which it belonged "was not in the nature of an import from a foreign country," citing *Weld* v. *Maxwell* (4 Blatch., 136, 29 Fed. Cas. 614, Case No. 17,374).

Similarly, we deem that case so factually different from the one at bar that it can in no sense be regarded as here applicable.

In our recent decision in *A. Johnson & Co., Inc.* v. *United States*, 17 Cust. Ct. 140, C. D. 1034, we were confronted with a set of facts strikingly similar to those in this case. There, as here, certain articles were transferred from one vessel and installed as replacement parts in a sister ship of the same line. But the collector classified the articles as imported merchandise, levying duty thereon at the rate of 27½ percent ad valorem under paragraph 372, Tariff Act of 1930, as parts of machines, not specially provided for. After reviewing somewhat at length the doctrine enunciated by the United States Supreme Court in the case of *The Conqueror*, 166 U. S. 110, wherein it was held that vessels and parts thereof were not subject to duty under our customs laws, and the application of that principle by our appellate court to the facts in the *Canadian Steamship Co.* case, *supra*, and other cases therein cited by the Government in support of its contention there made, we said in the *Johnson* case, *supra*—

While all of the cases to which reference has been made differ factually from the case now before us, nevertheless, the underlying principles which guided the courts in arriving at the conclusions in those proceedings would seem to govern the facts herein. Consequently, we are of the opinion that to sustain the claim of the plaintiff would require not only that we extend unduly the doctrine of *The Conqueror* and other cases, *supra*, but at the same time in effect ignore the settled

principle which must apply to this case, namely, that for an article to be entitled to free entry as a part of a vessel it must be shown that it was at the time of its arrival and importation into the United States, *bona fide*, a part of a particular vessel, in this case the *Axel Johnson*.

After carefully considering all the facts in the case at bar and the well-settled principles of law applicable thereto, as judicially enunciated in the leading case of *The Conqueror*, *supra*, and subsequent cases of like tenor, we hold the contention of the plaintiff herein to be without merit. Hence, all claims are overruled, and the decision of the collector is affirmed.

Judgment will be entered accordingly.