UNITED STATES *v.* COASTWISE STEAMSHIP & BARGE Co. (No. 1965).[1]

CONSTRUCTION, PARAGRAPH 404, TARIFF ACT OF 1913, AND TREASURY REGULATIONS THEREUNDER—"EXPORTED * * * FOR REPAIRS"—AMERICAN GOODS RETURNED.

An American vessel, outward bound, was wrecked. · Later she was salved and her engine sold to a firm in British Columbia. This firm repaired it and shipped it back to the United States. It was "exported * * * for repairs" within the meaning of that language in paragraph 404, tariff act of 1913. It was manifestly impossible to comply with the Treasury regulations as to the manner of proving the identity of American goods returned, and other proof was properly received. The merchandise was dutiable under paragraph 404, tariff act of 1913, to the extent of the value of the repairs, and not as a steam engine under paragraph 165.

United States Court of Customs Appeals, June 7, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42823.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence* and *John J. Mulvaney,* special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellee. .

[Oral argument Mar. 28, 1919, by Mr. Lawrence and Mr. Puckhafer.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

A certain marine steam engine imported into the country at Seattle was assessed for duty at 15 per cent ad valorem by the collector of customs at that port under the provisions of paragraph 165 of the tariff act of 1913, which paragraph is as follows:

165. All steam engines, steam locomotives, printing presses, and machine tools, 15 per centum ad valorem; embroidering machines, and lace-making machines, including machines for making lace curtains, nets, or nettings, 25 per centum ad valorem; machine tools as used in this paragraph shall be held to mean any machine operated by other than hand power which employs a tool for working on metal.

The importer protested that the engine was entitled to free entry under paragraph 404 of said act as American goods returned and that in no event could duty be charged on any amount greater than the value of the repairs made on the importation while abroad. Paragraph 404 so far as pertinent is as follows:

404. Articles the growth, produce, or manufacture of the United States, when·returned after·having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury; * * * articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject if imported under conditions and regulations to be prescribed by the Secretary of the Treasury.

The Board of General Appraisers sustained the protest and the Government appealed.

---

[1] T. D. 38047 (36 Treas. Dec., 501).

It appears from the evidence that the engine was installed on the American ship *Delhi* in 1906, and that it is an American product which was manufactured in that year by Moran & Co., at Seattle, in the United States.

The *Delhi*, while outward bound from Seattle and propelled by the engine that is the subject of protest, was wrecked in January, 1915. After the *Delhi* had been under water for almost a year she was salved and her engine was removed and sold to the Wallace Shipyards (Ltd.), of North Vancouver, British Columbia. The purchaser put in a new column to take the place of one broken in the wreck, covered the cylinders with new asbestos, and new tin sheet lagging, and cleaned the parts fouled or rusted by submersion. The cost of repairing and cleaning the engine was $3,000.

After the engine was repaired it was assembled and shipped to Seattle, where the collector of customs laid upon it a duty equal to 15 per cent of its value.

The Government contends that the claim of the importer can not be sustained, first, because the engine was never exported and was therefore not entitled to free entry inasmuch as free entry is limited to American products and American manufactures returned to the United States after having been exported therefrom; second, because the engine was not exported for repairs, and therefore duty was properly levied on the value of the engine and not on the cost of the repairs; third, because the importer did not comply with the reasonable regulations prescribed by the Secretary of the Treasury for the identification of American goods returned.

When the *Delhi* left the United States we do not think that her engine could be regarded as an export, inasmuch as it was then an essential part of the vessel ready for operation, and consequently not intended to be commingled with or introduced into the trade or commerce of some other country. When, however, the engine was removed from the *Delhi* it lost its character as part of the vessel and became an engine, damaged it may be, but still an engine, or at all events a commodity which, even if taken abroad, retained its status as an American product. It was, moreover, an American product that at some point of time was removed from the territorial jurisdiction of the United States and sold as merchandise in another country. An article so dealt with must be regarded as an export notwithstanding the fact that when it left the country of its origin it was not intended or fit to be used as a trade commodity. To hold otherwise would mean in this case that an engine originating in the United States and not exported therefrom was nevertheless imported into the British Dominions, an event scarcely compatible with the possibilities, inasmuch as the importation of goods into one country necessarily implies that they were exported from some other country.

It is our opinion that the importation here in question was exported from this country in the moment when as an engine it was taken out of the territorial jurisdiction of the United States with intent to introduce it into the commerce of a British possession. The engine having been carried to Vancouver, British Columbia, and unladen there for the purpose of repairing it, we must hold that it was exported for repairs within the meaning of paragraph 404.

The contention that the Treasury regulations were not complied with seems to be based upon the fact that no certificate of exportation of the engine was made by the collector or noted on the manifest. As the engine left port as part of the *Delhi* and did not become a trade commodity until after the wreck of the vessel, it is evident that the issuance of an export certificate and the notation of its issuance on the manifest were utterly impracticable.

We think that the regulations for the identification of American goods returned were prescribed by the Secretary of the Treasury for merchandise leaving the customs jurisdiction of the United States as exports and that such regulations are applicable only so far as practicable to American products that become commodities after they have passed beyond the jurisdiction of customs officers.

The importer of a manufacture, which became a commodity after it left the United States, must of course not only identify it as the American product, but he must show that it has not been advanced in value or improved in condition, and in establishing identity he must conform to all practicable Treasury regulations applicable to the case. If, however, it was impossible from the beginning to identify the article in accordance with the regulations, its identity may be established by satisfactory evidence other than that prescribed by the Secretary of the Treasury.

The evidence submitted by the importer established beyond debate that the engine in controversy was made in the United States; that it was built for and installed on the American ship *Delhi;* that the *Delhi,* outward bound from Seattle, was wrecked; that the engine was removed from the vessel and taken to Vancouver, British Columbia, from which place after being repaired it was shipped to Seattle, and that it was there unladen, neither advanced in value nor improved in condition; that evidence met every requirement for the admission under paragraph 404 of American manufactures returned, with the exception that proof of identity was not made in the manner prescribed by the Treasury regulations. In view of the fact, however, that it was wholly impracticable to prove identity in that way, and of the further fact that identity was proven beyond all reasonable doubt, the merchandise here involved is within the intention of paragraph 404 and should be classified as therein provided.

We hold that the importation is dutiable at 15 per cent on the value of the repairs made thereon, and the decision of the Board of General Appraisers is therefore *affirmed.*

DE VRIES and MARTIN, Judges, concur.

### CONCURRING OPINION.

BARBER, Judge: I concur in the conclusion reached in the opinion of Judge Smith that the judgment of the Board of General Appraisers should be affirmed.

I do not think, however, it should be held that the engine was exported for repairs within the meaning of paragraph 404. The appellee does not so contend in this court and alleges that it never so contended.

In my view the engine, exclusive of the cost of the repairs, is entitled to free entry as a manufacture of the United States returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means, all which conditions have been affirmatively found by the board and upon sufficient evidence.

I think that the word "exported" as used in paragraph 404 is not limited to the ordinary tariff meaning thereof, which may in substance be said to be the taking of merchandise from one country to another with the intention of uniting it to the subjects of commerce in the latter. The provisions of the paragraph for the return of boxes and other containers or coverings when exported filled with American products, or exported empty and returned filled with foreign products, also for photographic dry plates or films of American manufacture, exposed abroad and then returned to this country, and for articles exported for repairs and then returned, all seem to use the word "exported" as meaning the removal or taking out of the country of the property without an intent that the same shall be the subject of commerce in the country to which it is taken. The propriety of interpreting the word in this sense is recognized by the Supreme Court in the case of Swan & Finch Co. *v.* United States (190 U. S., 143), where, in substance, it was held that while the word "exported" should generally be understood in the ordinary tariff sense, yet the context might sometimes give to it a different meaning and that "in the execution of the administrative affairs of government it may have been applied to cases in which there was not in the full sense of the term an exportation."

The board held the costs of repairs were dutiable within the rule laid down by the Circuit Court of Appeals in Hillhouse *v.* United States (152 Fed., 163), as applied by this court in Denike *v.* United States (5 Ct. Cust. Appls., 364; T. D. 34553). No appeal was taken by the importer and consequently there is no question before us and

no views are here expressed or intimated as to the dutiability of such repairs.

In addition to what is said in the opinion of Judge Smith upon the subject in this case, the decision of Judge Somerville in G. A. 5219 (T. D. 24035) sets forth in apt language the substance of the reasons which excuse the appellee from the strict compliance with the Treasury regulations insisted upon by the Government in this case.

MONTGOMERY, Presiding Judge, concurs.