(C.D. 4505)

FRANK W. WINNE & SONS *v.* UNITED STATES

Court No. 63/22868

(Decided March 21, 1974)

*Allerton deC. Tompkins* for the plaintiff.

*Irving Jaffe*, Acting Assistant Attorney General (*Velta A. Melnbrencis* and *Andrew P. Vance*, trial attorneys), for the defendant.

MALETZ, Judge: This case involves the proper tariff classification of a shipment of sisal twine that was imported in 1963 from Mexico

into the United States via the port of Philadelphia. The twine was assessed with duty at the rate of 15 percent ad valorem under the provisions for cords and twine in paragraph 1005(b) of the Tariff Act of 1930, as modified, T.D. 51802. Plaintiff claims that the twine in controversy is entitled to entry free of duty as binding twine under the provisions of paragraph 1622 of the above act, as amended by Public Law 219, 65 Stat. 655 (1951).[1]

The relevant statutory provisions are:

Paragraph 1005(b), *supra:*

Cords and twines (whether or not composed of three or more strands, each strand composed of two or more yarns), tarred or untarred, single or plied, wholly or in chief value of manila (abaca), sisal, henequen, or other hard fiber_____ 15% ad val.

Paragraph 1622, *supra:*

All binding twine, and twine chiefly used for baling hay, straw, and other fodder and bedding materials, manufactured from New Zealand hemp, henequen, manila, istle or Tampico fiber, sisal grass, or sunn, or a mixture of any two or more of them, of single ply and measuring not exceeding seven hundred and fifty feet to the pound_____ Free

## I

The record establishes that the imported merchandise consists of one-ply, unoiled, Mexican sisal twine which measures less than 750 feet per pound, and is chiefly used for industrial wrapping and tying purposes and not for agricultural purposes or for baling hay, straw, or other fodder or bedding materials.[2] In this context, the issue is whether the term "binding twine" as used in paragraph 1622, as amended, includes twine that is chiefly used for industrial wrapping and tying purposes or whether the term "binding twine" is limited to twine that is chiefly used for agricultural purposes.

---

[1] The administrative protest in the present action covers all the merchandise imported under entry 26993. However, the complaint in the action is directed only to that merchandise identified on the invoice as :

Unoiled, Clipped, Sisal Twine

Reels, 1 Ply Medium, 300 Ft. per lb.
Coils, 1 Ply Medium, 300 Ft. per lb. M. ends
Reels, 1 Ply Fine, 400 Ft. per lb.

In this circumstance, plaintiff's claims as to the remaining merchandise covered by entry 26993 are deemed abandoned.

[2] The record herein consists of (1) the record in the incorporated case, *Maher-App & Co.* v. *United States,* 60 Cust. Ct. 470, C.D. 3429 (1968), *aff'd Id.* v. *Id.,* 57 CCPA 31, C.A.D. 973, 418 F. 2d 922 (1969) ; and (2) the record in the present case.

## II

Examination of the record in greater detail shows that the following types of twine have the quality and characteristics listed below:

*Binder twine* is a one-ply twine made of hard henequen or sisal fiber which is oiled and treated with insect repellent to resist rot, rodents and insects. It is manufactured to a length of 500 or more feet to the pound and is put up in either 8-pound tubes, 6 tubes to the bale, or in 5-pound balls, 10 balls to the bale. Twine of this type is chiefly used on the farm for binding and tying grains and is distributed through farm machinery and equipment dealers, farm and feed dealers, and farm cooperatives. Because it is oiled and treated with insect and rodent repellents, it cannot be used as wrapping or tying twine.

*Baler twine* is made of a one-ply material and ranges between 200 to 257 feet per pound; it is oiled and treated with insect repellent to resist rot, rodents and insects. Such twine is manufactured in 20-pound balls, with two balls to the bale; is much thicker, heavier and stronger than binder twine; and is chiefly used on the farm in hay balers to tie and bind bales of hay, straw and fodder crops. As in the case of binder twine, baler twine is distributed through farm machinery and equipment dealers, farm and feed dealers, and farm cooperatives. Also like binder twine, it cannot be used as wrapping or tying because of its oiled and repellent-treated condition.

*Wrapping twine and tying twine* are one and the same and are sometimes referred to as sisal twine. Twine of this type consists of a piece of string manufactured from fiber. It is stainless, i.e., unoiled, and is made in various put-ups, such as 10- or 20-pound balls or 50-pound reels or tubes, and also in different size bales according to customer specifications. It is white in color (although different colors may be specially ordered); is treated with a softening material; and comes in one, two or three plies in lengths of 200 and 300 or 400 feet. Wrapping and tying twine is not sold in the same channels of distribution as binder or baler twine; it is usually stronger than binder or baler twine; and it is not used for agricultural purposes but rather is chiefly used for such industrial purposes as wrapping or tying of packages; bundles, newspapers, etc.

The record further shows that the term "binding twine" is rarely used in the United States; that in the trade, agricultural twines are specifically referred to either as binder twine or baler twine, while wrapping or tying twines are referred to as such and also as sisal twines; that plaintiff's own catalogues refer to merchandise such as that involved here as wrapping or tying twine; that only in the most infrequent cases is wrapping or tying twine ordered under the name

of binding twine; that the term "binding twine" has never appeared in trade literature in connection with either binder twine or wrapping or tying twine; and that binder twine is not commercially interchangeable with wrapping or tying twine.

It is to be added that plaintiff's witnesses in the present case [3] testified that in their opinion the term "binding twine" covered *both* binder twine and wrapping and tying twine. This opinion, they testified, was based on the definition of the verb "bind" and the adjective "binding" as set out in Webster's *Third New International Dictionary* (1965 ed.). In that dictionary, the verb "bind" is defined as follows:

> bind, v.t.; 1. to make secure by tying (as with a cord) (they bound his hands) . . . 4. to tie together (as stalks of wheat) (binding the reaped wheat into sheaves) * * *

The adjective "binding" is defined in this dictionary as follows:

> 1. that binds or causes to bind: tending to bind.

Defendant's witness, on the other hand, when asked what in his opinion the term "binding twine" connoted, replied (R.131):

> Well, I think it is a play on words, a matter of semantics. We have had occasion to have the word referred to in the dictionary and as far as the dictionary is concerned, it would appear that binding things together can be accomplished with twine, but as far as the domestic twine industry is concerned, the only reference to the word binding is in connection with binding grain in shocks, as would be accomplished with binder twine.

## III

With the foregoing considerations in mind, plaintiff points out that in 1951, paragraph 1622 of the Tariff Act of 1930 was amended by Public Law 219 by inserting after the words "binding twine" a comma and the words "and twine chiefly used for baling hay, straw, and other fodder and bedding materials." To understand more fully the import of this change, it is helpful again to quote paragraph 1622—this time underscoring the new matter added by the 1951 amendment:

> Par. 1622. All binding twine, *and twine chiefly used for baling hay, straw, and other fodder and bedding materials*, manufactured from New Zealand hemp, henequen, manila, istle or Tampico fiber, sisal grass, or sunn, or a mixture of any two or more of them, of single ply and measuring not exceeding seven hundred and fifty feet to the pound.

---

[3] In the present case, plaintiff presented three witnesses, as follows: An employee of the plaintiff company who handled import and sales transactions; the president of the plaintiff company; and the president of a cordage importing and distributing company. Defendant called one witness who was the retired sales manager of a domestic cordage manufacturer.

With respect to this amendment, plaintiff contends that the intent of Congress in enacting it was to provide for *all* binding twine which, according to plaintiff, included wrapping and tying twine as well as twine chiefly used for baling specified agricultural commodities. In other words, plaintiff argues that in order to give significance to the word "all" as well as to the comma that appears after the words "all binding twine," the term "binding twine" embraces both agricultural (so-called binder twine) and non-agricultural twines (so-called wrapping or tying twines) that are used for binding purposes. Additionally, plaintiff asserts that decisions relating to paragraph 1622 before it was amended in 1951 are not determinative of the scope of that paragraph after it was amended.

Defendant, on the other hand, contends that a number of judicial decisions have held that to be entitled to free entry under paragraph 1622, a twine must be of a class or kind chiefly used in agricultural pursuits, and that since wrapping or tying twine is not so chiefly used, it is precluded from classification under paragraph 1622. Defendant further contends that legislative history and judicial decisions indicate that the 1951 amendment to paragraph 1622 did not enlarge its scope to include wrapping or tying twine under the term "all binding twine." For, according to defendant, the amendment was intended solely for the benefit of the American farmer and was enacted merely for clarification purposes in order specifically to cover baler twine—an agricultural twine. Finally, defendant argues that in any event, the common meaning of the term "binding twine" is a class of twine chiefly used in agriculture.

For the reasons that follow, the court agrees with defendant's position and overrules plaintiff's claim that the imported merchandise should be classified under paragraph 1622.[4]

## IV

A. Over the years, there has been considerable litigation as to what merchandise is covered by the language "all binding twine" in paragraph 1622 of the 1930 Tariff Act. By way of background, we consider at the outset those cases involving that paragraph which were decided before the 1951 amendment was adopted.[5]

The first of these cases was *Geo. Wm. Rueff, Inc.* v. *United States*, 65 Treas. Dec. 740, T.D. 47033 (1934) which concerned the proper classi-

---

[4] Defendant also argues that the court erred in admitting into evidence certain exhibits as representative of the imported merchandise and that accordingly plaintiff has failed in its burden of proof. This argument, the court concludes, is devoid of merit.

[5] Prior to the 1951 amendment, paragraph 1622 read as follows:

All binding twine manufactured from New Zealand hemp, henequen, manila, istle or Tampico fiber, sisal grass, or sunn, or a mixture of any two or more of them, of single ply and measuring not exceeding seven hundred and fifty feet to the pound.

fication of sisal twine that met all the specifications of paragraph 1622 for binding twine and was used exclusively in agriculture on farms and in harvesting machinery to bind up sheaves of grain. However, the collector classified the twine under paragraph 1005(b) rather than under paragraph 1622 for the sole reason that it did not contain as much as 8% of oil, as required by a Treasury regulation which provided that twine was not to be classified free of duty under paragraph 1622 if it contained less than 8% of oil. The court held that the regulation was invalid as an abridgment of law, and further concluded that "the character of the merchandise * * * has been fully established as sisal *binder* twine." [Emphasis added.] 65 Treas. Dec. at 745. For these reasons, the court sustained the protest which claimed the merchandise was free of duty under paragraph 1622.

The second case was *Geo. Wm. Rueff, Inc.* v. *United States*, 72 Treas. Dec. 290, T.D. 49151 (1937) in which binder twine measuring less than 475 feet to the pound was classified by the collector under paragraph 1005(b) rather than under paragraph 1622 on the basis of a Treasury regulation which required that in order to be entitled to classification as binding twine under the latter paragraph, the twine must contain not less than 500 feet to the pound, from which the collector allowed a variation up to 5%, making a minimum requirement for binding twine of 475 feet to the pound. The court first found (72 Treas. Dec. at 293):

> The testimony taken as a whole shows that *the imported merchandise is of the character or kind wholly or chiefly used on harvesting machines for the binding of grains such as wheat, corn, rice, etc.,* and that it is so used whether it measures 750, 500, 475, or less feet to the pound. *The testimony further shows that the merchandise meets all the statutory requirements for classification as binding twine (which is shown to be synonymous with binder twine)* as laid down in said paragraph 1622 of said act of 1930, in that it is manufactured from sisal grass, is of single ply, and measures not exceeding 750 feet to the pound. [Emphasis added.]

The court then held that unless it was established that twine of the kind and character in question of less than 475 feet to the pound was not chiefly used for the binding of grain, the foregoing Treasury regulation was invalid as an abridgment of law. Since the government had been unable to put in any evidence of such fact, and since the testimony of the plaintiff to the contrary was uncontradicted, the court held that the case fell squarely within the court's decision in the prior *Rueff* case, *supra*, 65 Treas. Dec. 740. Accordingly, plaintiff's claim for free entry of the merchandise under paragraph 1622 as binding twine was sustained.

The next relevant case was *Independent Cordage Co., Inc.* v. *United*

*States,* 3 Cust. Ct. 157, C.D. 223 (1939). There, single-ply sisal twine measuring not exceeding 750 feet to the pound and containing 3% of oil and less, was classified under paragraph 1005(b) of the Tariff Act of 1930 and was claimed to be free of duty as binding twine under paragraph 1622. The court held (1) that the provision for binding twine in paragraph 1622 is an *eo nomine* designation by use and has reference to twine chiefly used on binder or harvesting machines for the binding of grain after cutting; (2) that it was shown by the record and other cases that the terms "binding twine" and "binder twine" are synonymous and interchangeable terms; and (3) that plaintiff's claim had to be overruled for failure to prove chief use. As the court said (3 Cust. Ct. at 162):

> *In the present instance there is no testimony as to what the particuar importation of twine was used for, much less that this kind or class of twine was chiefly used on binder or harvesting machines for binding grain. If "binding twine" or "binder twine" is to be regarded as an eo nomine designation by use, as above indicated by us, chief use of the merchandise on harvesting machines for binding grain is undoubtedly of paramount importance to establish its character as binding twine, apart from the other specifications called for by said paragraph 1622.* This was also indicated by us in the later case of *Geo. Wm. Rueff, Inc.* v. *United States,* T.D. 49151, decided September 1, 1937, raising the question as to the validity of the regulation of the Secretary of the Treasury (T.D. 40805) requiring that binding twine "must contain approximately not less than 500 feet to the pound." This court held this regulation also invalid for the same reason as that given in the first *Rueff* case, *supra,* and, in sustaining plaintiff's claim for free entry of the merchandise as sisal binding twine, did so *on the showing that the twine therein was of the kind or class wholly or chiefly used on harvesting machines for the binding* of grains * * *.

> \* \* \* \* \* \* \*

> *The failure of proof on the question of chief use of the kind or class of sisal twine in the present instance is necessarily fatal to plaintiffs' claim, especially as its own witness Bancroft testified on cross-examination that his definition of binding twine would be a good definition of one-ply wrapping twine * * *.* [Emphasis throughout added.]

To similar effect as *Independent Cordage* is *Alberto Vales* v. *United States,* 9 Cust. Ct. 219, C.D. 698 (1942) where plaintiff's claim for classification of sisal twine under paragraph 1622 was overruled on the basis that plaintiff had failed to prove that the importation was chiefly used on harvesting machines for the binding of grain.

To sum up, the foregoing decisions make it clear that the term "binding twine" in paragraph 1622 was used synonymously and

interchangeably with the term "binder twine." Further, on this aspect, it is to be noted that since 1896 binding twine has been allowed entry free of duty and "[w]henever, in the years intervening * * * the provision was the subject of congressional or Tariff Commission consideration, the phrases 'binding twine' and 'binder twine' appear to have been employed interchangeably, although the latter phrase predominates throughout." *Geo. Wm. Rueff, Inc.* v. *United States*, 28 Cust. Ct. 84, 91, C.D. 1392 (1952), aff'd sub. nom. *United States* v. *Geo. Wm. Rueff, Inc.*, 41 CCPA 95, C.A.D. 535 (1953). Finally, it is important to observe that the purpose of allowing duty-free entry of binding twine was to aid the American farmer. As this court pointed out in *Rueff* (28 Cust. Ct. at 90) :

> An examination into the circumstances surrounding congressional action in removing binding twine from the dutiable schedules reveals that it was the desire of the Congress to alleviate the unfortunate economic plight in which the American farmer then found himself, a condition which, in a measure, was aggravated by the protective tariff system. To permit the farmer a more profitable enjoyment of the fruits of his hard and continuing labor, the import tax upon certain articles and materials, including binder twine, was removed.

B. Against this background, we consider now the 1951 amendment to paragraph 1622. The factor that gave rise to this amendment was a ruling issued by the Commissioner of Customs in October 1945 that baler twine—i.e., twine used chiefly in hay balers to tie and bind bales of hay, straw and fodder crops—was not entitled to duty-free entry under paragraph 1622, but rather was classifiable under paragraph 1005(b) and thus dutiable at 15 percent ad valorem. To overcome that ruling—which was in the process of litigation[6]—Public Law 219 was enacted in 1951 to add to paragraph 1622 a provision for baler twine. Examination of the legislative history makes it clear that the amendment was neither intended to change nor changed the basic purpose of the scope of the paragraph—which was to benefit the American farmer by allowing duty-free entry of agricultural twine. For one thing, the very name of H.R. 1005, which subsequently became Public Law 219, is significant. It was "A bill to amend the Tariff Act of 1930 to provide for the free importation of twine used for baling hay, straw, and other fodder and bedding material." See 97 Cong. Rec. 110 (1951). It was not "A bill to provide for the free importation of wrapping or tying twine." Beyond that, the specific intent of Congress was expressed in the general debate on H.R. 1005 in the House of Representatives. 97 Cong. Rec. 11263–11284, 11398–11416

---

[6] The litigation then in process was *Geo. Wm. Rueff, Inc.* v. *United States, supra,* 28 Cust. Ct. 84, aff'd 41 CCPA 95.

(1951). Thus, the debate made the following facts clear as to congressional intent:

1. The purpose of the bill was to provide the same duty-free treatment for baler twine as had been granted to binder twine since 1896;

2. The bill was for the benefit of the American farmers and was supported by the four major farm organizations;

3. Binder and baler twine were the two major kinds of agricultural binding twines, though baler twine did not come into use until 1939;

4. Both binder and baler twine were used by the same farmers in harvesting crops;

5. The bill was not designed to establish any new policy in tariff matters but would be in accord with the established policy of Congress to admit agricultural commodities and implements free of duty;

6. The language of paragraph 1622 was broad enough to include all agricultural twine, both binder and baler twine, on the free list. However, because of the Bureau of Customs ruling that baler twine was subject to a duty of 15 percent ad valorem, legislative recourse was the only proper and quick answer to establishing congressional intent;

7. When Congress used the word "binding twine" instead of "binder twine" in the Tariff Act of 1930, the basic purpose was to cover materials used by farmers in the binding of their crops during harvest;

8. The purpose of H.R. 1005 was to provide for the free importation of baler twine by clarifying the intent of Congress in paragraph 1622.

Also during the course of the House debate, Representative Wilbur Mills, a member of the Ways and Means Committee, reiterated that H.R. 1005 was for the benefit of the farmers; that it had been a congressional bipartisan policy of long standing to keep farm supplies and equipment used by the farmer in his farming operations on the duty-free list; and that farm organizations had urged the legislation, since they desired to put baler twine on the free list where they believed it was intended to be by the action of Congress in 1896. 97 Cong. Rec. 11274–11275 (1951). He further informed the House (*Id.* at 11275) that—

> The Tariff Act of 1930, and previous acts, recognize the various products of the cordage industry, paragraph 1005(a) provides for cordage—rope—and *paragraph 1005(b) provides for wrapping or tying twines. Cordage, rope, wrapping, and tying twines are all subject to import duties. Paragraph 1622 provides for all binding twines—agricultural twines—which are exempt from import duties.* [Emphasis added.]

Senate Report No. 1050, which accompanied H.R. 1005 (2 U.S. Code Cong. and Adm. Serv., 82d Cong., 1st Sess., pp. 2467–2469 (1951)), similarly made clear that the purpose of the bill was for the benefit of the farmer. Thus, the report pointed out (*Id.* at 2468):

* * * [T]here is no just basis for distinguishing between the tariff status of such essential commodities of similar use on the farm as binder twine, baling wire, and baler twine. This bill will place baler twine on the same duty-free status as binder twine and baling wire, which is in accord with the established policy of Congress to admit agricultural commodities and implements free of duty.

From the foregoing there can be no doubt that the only purpose of the 1951 amendment to paragraph 1622 was to aid the farmer by insuring duty-free treatment for baler twine. Indeed, to construe the amendment as providing duty-free treatment for wrapping or tying twine would be to completely ignore congressional intent.[7]

C. The next relevant event following enactment of the 1951 amendment was the decision by our appellate court in *United States* v. *Geo. Wm. Rueff, Inc.*, 41 CCPA 95, C.A.D. 535 (1953). The sole issue in that case—which arose prior to the 1951 amendment—was whether the term "all binding twine" in paragraph 1622 was intended to cover only "binder twine" or whether it was flexible enough to include baler twine used in harvesting operations for tying or binding purposes. In affirming the decision of this court which sustained the plaintiff's protest for duty-free entry under paragraph 1622, the appellate court stated (41 CCPA at 100–101):

> *Coming then to an interpretation of the term "binding twine," as used in paragraph 1622, there is no doubt in our minds as to the validity of the Government's contention that the term has been used synonymously and interchangeably with the term "binder twine" in judicial decisions as well as in Congressional proceedings.* However, it does not necessarily follow that such use of the terms precludes admission of the involved twine into the provisions of paragraph 1622. The definitions cited by the trial court show that the term "binding twine" is not limited solely and exclusively to the tying or binding of small grains, but are flexible enough to include twine of the instant type in harvesting operations for tying or binding purposes.
>
> While there are, as pointed out above, some differences in the physical composition of the two twines, at the same time they also possess many similar physical characteristics as well as in the common use to which they are put. *Both are used in what are*

---

[7] Plaintiff argues (Br. p. 11) that if Congress intended in the 1951 amendment to limit paragraph 1622 to include only agricultural twine, it would have extended the term "twine chiefly used for baling hay, straw, etc. to binding twine." However, plaintiff says, Congress did not do so but rather "went to the trouble of evidencing its intent by placing a comma after the words 'all binding twine.'" In this circumstance, plaintiff contends that "[a]s thus amended by Congress the agricultural limitation placed upon other things mentioned in the paragraph was not extended to binding twine." The difficulty with this argument is that inasmuch as wrapping or tying twine was *never* within the scope of paragraph 1622, Congress did not have to add additional language to the words "all binding twine" to include only agricultural twine. Further, it is clear from the legislative history of the 1951 amendment and the other sources referred to previously, that over the years the term "all binding twine" was intended to cover only agricultural twine.

*clearly agricultural pursuits, viz, in the binding of small grains and in the baling of hay. * * ***

While it is true the involved twine was not in existence when the Tariff Act of 1930 was enacted, it is axiomatic that Congress legislates for the future as well as for the present, and we must assume that Congress, in writing the instant paragraph, imposed therein all of the limitations which it intended that class and kind of merchandise to bear. Clearly, it was not necessary for Congress to employ the word "all" unless it intended that word to encompass *all* of the twine which met the specific requirements thereof. We are in agreement with the trial court that the involved twine meets those limitations and that paragraph 1622 should control.

Moreover, it is our view that to hold otherwise would result in an anomalous and undesirable situation. For example, a farmer using binding twine in the agricultural pursuit of harvesting small grains would be using a twine completely free of duty, whereas his neighbor across the fence, likewise engaged in an agricultural pursuit, the baling of hay, and using a twine meeting the physical specifications of the same paragraph under which the binding twine was entered, would be compelled to pay a duty. If Congress intended, as both the trial court and this court believe to be the case, *that the instant paragraph was enacted for the benefit of the farmer in his agricultural pursuits, then such a situation would be absurd.* We concur with the view of the Customs Court that the language of paragraph 1622 is clearly broad enough to avoid such an anomaly.

\*     \*     \*     \*     \*     \*     \*

We note in the briefs of the parties that great emphasis is placed upon the probable reasons for the enactment of Public Law 219 (approved October 25, 1951) in which Act paragraph 1622 was amended by adding the words "and twine chiefly used for baling hay, straw and other fodder and bedding materials."

Counsel for the Government and *amicus curiae* urge that such action is evidence that the original paragraph did not include twine such as that at bar.

Appellee, on the other hand, urges that such amendment is evidence that Congress intented only to clarify its original intent and to void the ruling of the Commissioner of Customs which, in 1945, placed twine such as that at bar under paragraph 1005(b).

\* \* \* *We believe the circumstances here are more than ample to support our conclusion that Congress intended only to clarify the language orignally employed in paragraph 1622.* [Emphasis throughout added.]

The holding in *Rueff* (41 CCPA 95) was reaffirmed in *Bob Stone Cordage Co.* v. *United States,* 51 CCPA 60, C.A.D. 838 (1964) where the court concluded that imported binding twine had to be of a class or kind chiefly used in agricultural pursuits in order to qualify for

free entry under paragraph 1622, as amended in 1951 by Public Law 219. *Id.* at 69. In view of this consideration, the court affirmed the overruling of a protest—which claimed that merchandise invoiced as "binder twine" was such twine as was encompassed by paragraph 1622, as amended—on the principal ground of a failure to show that the uses of the importations were *chiefly agricultural.*

The last decision of relevance was in *Maher-App & Co.* v. *United States,* 57 CCPA 31, C.A.D. 973 (1969) where the issue was whether the importation constituted such twine as came within the description "binding twine" in paragraph 1622, as amended. The appellate court agreed with this court that plaintiffs had offered no proof that twine possessing the characteristics of the importation in question was chiefly used on the farm and therefore affirmed this court's decision and judgment overruling the protest.[8]

Thus it is clear beyond question that both this court and the Court of Customs and Patent Appeals are in agreement that Congress intended to enact paragraph 1622 and the 1951 amendment for the benefit of the farmer in his agricultural pursuits. Likewise, it is equally clear that the 1951 amendment merely clarified the language originally employed in paragraph 1622 by adding a provision for baler twine—a twine chiefly used in agriculture. In view of these considerations, the courts have consistently held that to come within the provision for "all binding twine" in paragraph 1622, even as amended, the twine must be of a class chiefly used in agricultural pursuits. Obviously, the wrapping and tying twine here in controversy does *not* belong to such a class since it does not consist of agricultural twine; cannot be used interchangeably with agricultural twine; and is chiefly used for industrial wrapping or tying purposes rather than for agricultural purposes.

## V

Since Congress intended that only agricultural twine be considered "binding twine" under paragraph 1622, the common meaning of the term "binding twine" is irrelevant. For "[t]he master rule of construction in the consideration of all statutes is so to interpret them as to carry out the legislative intent, and any rule of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule." *United States* v. *Herman H. Sticht & Co.,* 22

---

[8] Two of the appellate judges in *Maher-App* dissented on the ground that the record, in their view, showed that the importation was of a class used exclusively for agricultural purposes. 57 CCPA at 40–43. In other words, the disagreement of the dissenting judges was with the majority's interpretation of the testimony, not with the requirement that to come within the provision for "all binding twine" imported twine must be of a class chiefly used in the agricultural pursuits of tying grains or harvesting. 57 CCPA at 42.

CCPA 40, 44, T.D. 47048 (1934). See also e.g., *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, 79, C.A.D. 611 (1956). But even assuming that common meaning is relevant, it is apparent that the common meaning of the term "binding twine" does not refer to wrapping and tying twine such as is involved here.

In the first place, dictionaries specifically define "binding twine" in terms of agricultural twine and not in terms of wrapping or tying twine, or twine generally. Thus Webster's *New International Dictionary of the English Language* (1927 ed.) defines "binding twine" as follows:

> Binding twine. A coarse slack-twisted twine or thin rope used in harvesting machines to bind the grain after cutting.

Webster's *New International Dictionary of the English Language* (2d ed., 1948) defines "binding twine" as "binder twine," and "binder twine" as:

> A coarse slack-twisted twine or thin rope used in binding, esp. in tying grain after cutting.[9]

Considering that there is a specific definition in the dictionaries for the term "binding twine," there is no sound reason for ignoring it and resorting to the extremely broad and all-encompassing definitions of the words "to bind" and "binding."

Nor does the record indicate that "binding twine" is a comprehensive term that includes both binder twine and wrapping and tying twine. To the contrary, the record (as previously observed) shows (1) that in the trade agricultural twines are referred to as binder or baler twines, while wrapping or tying twines are referred to as such and also as sisal twines; (2) that the term "binding twine" is rarely used in the trade; (3) that trade literature has never referred to wrapping and tying twine as "binding twine"; and (4) that only in the most infrequent cases is wrapping or tying twine ordered under the name of binding twine. The record further shows that agricultural twines are not commercially interchangeable with wrapping and tying twines, are not sold through the same channels of distribution, differ in a number of physical characterisics, and are used for different purposes.

In short, by definition, physical characteristics, usage and trade nomenclature, wrapping or tying twine belongs to an entirely different class or kind of twine from agricultural twine and is not generally known or referred to as "binding twine." Thus, it is evident that wrapping or tying twine does not come within the common meaning of the term "binding twine."

---

[9] To similar effect are the definitions in Webster's *Third New International Dictionary* (2d ed., 1963) of "binding twine" and "binder twine."

## VI

In summary, the foregoing shows that Congress never intended to provide for duty-free entry for any twines other than agricultural twines. Furthermore, the common meaning of the term "binding twine" does not include non-agricultural twines such as wrapping or tying twines. Accordingly, it is concluded that since the imported merchandise does not belong to a class or kind of twine which is chiefly used in agricultural pursuits or harvesting, it was properly classified under paragraph 1005(b) of the Tariff Act of 1930. Plaintiff's claim for classification under paragraph 1622, as amended, is therefore overruled and judgment will be entered accordingly.